Dear Senator Riser:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. You have asked for our opinion on a matter related to the Louisiana film industry. Specifically, you ask whether property acquired by "owner-financing" is eligible for tax credits under Louisiana law, La.Rev.Stat. 47:6007.
Your request indicates that in 2002, 2005, and 2007, the Louisiana Legislature passed legislation related to the film industry. According to your request, the first legislation passed was related to tax credits for television and film productions; the second bill that was enacted expanded the law to include film infrastructure projects; and the third legislation that was passed refined the earlier legislation and placed restrictions on new applications for film infrastructure projects. The initial legislation directed the Louisiana Department of Economic Development and the Governor's Office of Film and Television Development to promulgate rules and regulations regarding these tax credits. However, you indicate no such rules or regulations have been promulgated.
Currently at issue is the granting of tax credits for state-certified infrastructure projects. In general terms, our understanding of the implementation of the tax credit program for infrastructure projects is as follows:
 1) An applicant files an application requesting initial certification status along with supporting documents detailing the nature and scope of the proposed project, a preliminary budget, a complete business plan and marketing analysis, and estimated start and complete dates.
 2) After review of supporting documentation, and possibly negotiations concerning details of the project, the Governor's Office of Film and Television Development, the Louisiana Department of Economic Development, and the Division of Administration issue an initial certification letter to investors and to the Louisiana Department of Revenue indicating the total base investment *Page 2 
which shall be expended in the state on the project, and when tax credits may be taken.
 3) The applicant then submits a cost report of expenditures audited and certified by an independent certified public accountant. The audit is to be performed in accordance with auditing standards generally accepted in the United States of America.
 4) After review and verification of supporting documentation, the Governor's Office of Film and Television Development, the Louisiana Department of Economic Development and the Division of Administration issue a final certification letter indicating the amount of tax credits certified. See La.Rev.Stat. 47:6007(D).
According to your request, the independent, third-party audit referenced above ensures that the expenditures conform to generally accepted auditing standards and further provides the basis for the issuance of tax credits. You state that generally accepted auditing standards recognize property acquired through the use of "owner-financing" as an expenditure. Nevertheless, you indicate that the Louisiana Department of Economic Development has taken the position that: "owner-financed purchases are not considered expenditures until actual payments are made." You believe there is no support for this position in the law.
It is your position that the Louisiana Legislature did not place any restrictions on, or prohibit any particular method of financing the acquisition of property to be used in infrastructure projects. It is your belief that the Legislature tacitly recognized that the acquisition of such property could be accomplished by any method of financing commonly used for such transactions. In support of your position, you make reference to House Concurrent Resolution No. 181 of the 2008 Regular Session, which provides, in pertinent part, the following:
 "Whereas, the Legislature of Louisiana provided for tax credits for infrastructure projects which included tangible property acquired by means of cash, bonds. . . . or by loans made from a lender, regardless of who holds the promissory note, including the property owner;. . ."
You further cite Louisiana Department of Revenue Private Letter Ruling 07-001 (P.L.R. 07-001) and Revenue Ruling 06-016 as support. In P.L.R. 07-001, the Louisiana Department of Revenue concluded the following:
 "For purposes of La.Rev.Stat. 47:6007(C)(1) the contribution of an interest bearing note will constitute an investment in an amount equal to the original principal amount of the note if payment of the entire principal amount of any such note can be demanded at any time and if such principal amount is immediately available (subject to reasonable payment *Page 3 
deadline such as five business days) upon any such demand. If a note does not meet the criteria set forth in this ruling paragraph, then the amount of the investment will be deemed to be the fair market value of the note on the day it is contributed to the production company."
Revenue Ruling 06-016 is essentially a listing of frequently asked questions and answers concerning the motion picture investor tax credit. It contains a common fact pattern intended to illustrate the use of Investor Tax Credits and further includes the above-statement referenced in P.L.R. 07-001.
You now seek a legal opinion from our office as to whether the acquisition of property by "owner-financing" is eligible for tax credits under Louisiana law, or in other words, whether owner-financed purchases are to be considered expenditures only when actual payments are made.
La.Rev.Stat. 47:6007 (C) provides, in pertinent part, the following with respect to investor credits for state-certified infrastructure projects:
 C. Investor tax credit; specific productions and projects.
 * * * (2)(a) Beginning July 1, 2005, and ending on January 1, 2009, there shall be allowed a credit against state income tax for state-certified infrastructure projects which meet the criteria provided for in this Paragraph and which are approved by the office, the secretary of the Department of Economic Development, and the division of administration. The tax credit shall be equal to forty percent of the base investment expended in this state on such project which is in excess of three hundred thousand dollars. The total tax credit allowed for any state-certified infrastructure project shall not exceed twenty-five million dollars, and the tax credit shall be earned and may be structured as provided for in this Paragraph.
 (b)(i) An infrastructure project shall be approved if it is a film, video, television, or digital production or postproduction facility.
 (ii) However, if all or a portion of an infrastructure project is a facility which may be used for other purposes unrelated to production or postproduction activities, then the project shall be approved only if a determination is made that the multiple-use facility will support and will be necessary to secure production or postproduction activity for the production and postproduction facility and the applicant provides sufficient contractual assurances that:
 (aa) The facility will be used as a state-of-the-art production or *Page 4 
postproduction facility, or as a support and component thereof, for the useful life of the facility.
 (bb) No tax credits shall be earned on such multiple-use facilities until the production or postproduction facility is complete.
 (c) Tax credits for infrastructure projects shall be earned only as follows:
 (i) Construction of the infrastructure project shall begin within six months of the initial certification provided for in Subparagraph (D)(2)(c) of this Section.
 (ii) Expenditures shall be certified by the office, the secretary, and the division as provided for in Paragraph (D)(2) of this Section, and credits are not earned until such certification.
 (iii) Twenty-five percent of the total base investment provided for in the initial certification of an infrastructure project pursuant to Subparagraph (D)(2)(d) of this Section shall be certified as expended before any credits may be earned.
 (iv) No tax credit shall be allowed for expenditures made for any infrastructure project after December 31, 2008, unless fifty percent of total base investment provided for in the initial certification of the project pursuant to Subparagraph (D)(2)(d) of this Section has been expended prior to that date. The expenditures may be finally certified at a later date.
 (v) For purposes of allowing tax credits against state income tax liability and transferability of the tax credits, the tax credits shall be deemed earned at the time the expenditures are made, provided that all requirements of this Subsection have been met and after the tax credits have been certified.
 (d) The office, the secretary, and the division may require the tax credits to be taken and/or transferred in the tax period in which the credit is earned or may structure the tax credit in the initial certification of the project to provide that only a portion of the tax credit be taken over the course of two or more tax years.
Thus, pursuant to statute, tax credits for a state-certified infrastructure project shall be equal to forty percent (40%) of the base investment expended in this state for such project which is in excess of three hundred thousand dollars. The total tax credit allowed for the project shall not exceed twenty-five million dollars. *Page 5 
With respect to state-certified infrastructure projects, La.Rev.Stat. 47:6007 (B) defines "base investment" as the actual investment made and expended by a person in the development of a state-certified infrastructure project. The term "expended in state," in the case of tangible property, is defined as property acquired from a source within the state. See La.Rev.Stat. 47:6007 (B).
Our review of the language of La.Rev.Stat. 47:6007 fails to reveal either a clear prohibition against, or authorization for the use of "owner-financing" for purposes of establishing eligibility fortax credits. In our view, La.Rev.Stat. 47:6007, in its current form, fails to reference, authorize, or exclude any method of financing the acquisition of tangible property. We believe the legislation is silent on this issue.
Notwithstanding, our review of La.Rev.Stat. 47:6007 does reveal a broad grant of discretion and power in favor of the Governor's Office of Film and Television Development, the Louisiana Department of Economic Development and the Division of Administration in determining what infrastructure projects are approved, what expenditures are certified and how tax credits are structured, including when tax credits are taken and/or transferred. See La.Rev.Stat. 47:6007 (D). In our view, the determination of whether "owner-financed" purchases are to be considered expenditures only when actual payments are made appears to be a determination that lies within the purview and expertise of the Governor's Office of Film and Television Development, the Louisiana Department of Economic Development and the Division of Administration.
On a number of occasions, various courts and this office have recognized that considerable weight must be afforded to an agency's construction of a statutory provision that it is entrusted to administer and deference must be given to its administrative interpretations.See Woman's and Children's Hosp. v. State, Dept. of Health andHospitals, 2007-1157 (La.App. 1 Cir. 2/8/08), 984 So.2d 760; Attorney General Opinion Nos. 02-0234, 85-3260. Accordingly, it is our opinion that the Governor's Office of Film and Television Development, the Louisiana Department of Economic Development and the Division of Administration are owed deference in their determination that owner-financed purchases are not considered expenditures until actual payments are made. We believe such a determination is reasonable, and is in accord with the logic and presumed fair purpose and intent of the legislature in passing the film tax legislation.
With respect to P.L.R. 07-001, we note that according to the Department of Revenue's website, Private Letter Rulings are a type of declaratory ruling that is written to provide guidance to a specific taxpayer at the taxpayer's request. Such Private Letter Rulings formally apply to only the taxpayers to whom the letters are addressed. We have confirmed with the Louisiana Department of Revenue that P.L.R. 07-001 references a state-certified production, not a state-certified infrastructure project. As such, we believe P.L.R. 07-001 is inapplicable to the present issue. *Page 6 
With respect to Revenue Ruling 06-016, it is our understanding that Revenue Rulings are a type of a declaratory ruling written to apply principles of law and a statement of the department's position to specific sets of facts. Although Revenue Rulings are initiated internally and serve as guidance if the law or regulations are not clear, Revenue Rulings are not law and are not binding on courts. Revenue Rulings are only binding on the Louisiana Department of Revenue with respect to the particular issue addressed in the ruling. Further, in this limited manner, they are only binding until superseded or modified by subsequent change in statute, regulation, declaratory ruling, or court decision. Still further, as with P.L.R. 07-001, we note that Revenue Ruling 06-016 concerned a state-certified production, not a state-certified infrastructure project. Accordingly, we do not believe Revenue Ruling 06-016 is applicable to the present issue. We also note that the Department of Revenue is not the agency charged with implementing the motion picture tax credit program. Thus, their determinations and conclusions are not entitled to the same deference as those made by the Governor's Office of Film and Television Development, the Louisiana Department of Economic Development and the Division of Administration.
With respect to House Concurrent Resolution No. 181, although we believe the opinions of the Legislature are entitled to respectful consideration, we do not believe the statements and opinions contained therein are controlling and binding. Black's Legal Dictionary, 8th Edition defines a concurrent resolution as "a resolution passed by one house and agreed to by the other. It expresses the legislature's opinion on a subject but does not have the force of law." As such, we do not believe the resolution has the same effect as law and is not binding or controlling.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: _________________________
 MICHAEL J. VALLAN Assistant Attorney General
JDC/MJV/crt